**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS**

KEONTAE NELSON,

        Petitioner,    :        Case No. 2:24-cv-4301

  - vs -                                  Chief Judge Sarah D. Morrison
                                       Magistrate Judge Michael R. Merz

BILL COOL, WARDEN,
 Ross Correctional Institution,

                                     :
        Respondent.

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case, brought pursuant to 28 U.S.C. § 2254 by Petitioner Keontae Nelson with the assistance of counsel. Petitioner seeks relief from his conviction in the Meigs County Court of Common Pleas and his consequent imprisonment in Respondent's custody. The case is ripe for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 8), the Return of Writ (ECF No. 10), and Petitioner's Traverse (ECF No. 17).

The Magistrate Judge reference in the case was recently transferred to the undersigned to help balance the Magistrate Judge workload in the District (ECF No. 18).

**Litigation History**

On June 1, 2022, a Meigs County grand jury indicted Petitioner on one count of aggravated

1

murder in violation of Ohio Rev. Code § 2903.01(A) (Count 1), one count of murder in violation of Ohio Rev. Code § 2903.02(A) (Count 2), one count of complicity to aggravated murder or murder in violation of Ohio Rev. Code § 2923.03(A)(2) (Count 3), one count of conspiracy in violation of Ohio Rev. Code § 2923.01(A)(2) (Count 4), one count of burglary in violation of Ohio Rev. Code § 2911.12(A)(1) (Count 5), and one count of tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1) (Count 6). Firearm specifications were attached to Counts 1 and 2. (Indictment, State Court Record, ECF No. 8, Ex. 1).

A trial jury convicted Nelson on all counts. The trial court merged the convictions and sentenced Nelson to three years on the firearm specification plus life without parole on the aggravated murder conviction. On direct appeal, the Ohio Fourth District Court of Appeals reversed the conspiracy conviction but otherwise affirmed (Decision, State Court Record, ECF No. 8, Ex. 9). The Fourth District summarized the evidence as follows:

> {¶ 7} In the early morning hours of April 4, 2021, Kane Roush was shot multiple times and killed. Two neighbors were awakened by the sounds of shotgun blasts. They went outside and discovered Roush on the ground covered in blood and called 9-1-1. One of the neighbors asked Roush who had shot him and Roush responded, "some black guy." The paramedics arrived shortly thereafter and transported Roush to the hospital. During transport he experienced cardiac arrest, could not be resuscitated, and was pronounced dead shortly upon arrival at the hospital.
>
> {¶ 8} The coroner testified and provided an autopsy report of the cause of death. Roush had four shotgun wounds and four gunshot wounds. One of the shotgun wounds was to the left side of the head, one was to the right upper shoulder, one was to the left upper shoulder, and one was to the left arm. There were also four gunshot wounds: one to the midline lower back that injured his small intestine, liver, and diaphragm; one to his left buttocks that injured his bladder; and two to his right lower thigh. The coroner testified that the cause of Roush's death was multiple shotgun and gunshot wounds.

2

{¶ 9} Through their investigative efforts, law enforcement determined that there were probably two to three assailants involved in the murder of Roush and perhaps one of the assailants had been shot. Inquiries made at various hospitals in the general area in both Ohio and West Virginia led them to discover that Jaquan Hall had been shot in the arm. Eventually a search of Hall's vehicle lead to the discovery of DNA evidence that matched DNA at the crime scene. Authorities obtained a warrant to swab Hall for DNA, which also showed a match to evidence at the crime scene and Hall was indicted. Hall's DNA matched the DNA profile on a pair of shorts that were found in the roadway outside Roush's residence. Hall's DNA was also a match for one of the two sets of DNA profiles found on the Crown Royal bag found at the scene, which contained an empty box of Remington shotgun shells.

{¶10} Law enforcement from the Meigs County Sheriff's Department and The Ohio Bureau of Criminal Investigation collected evidence from the scene and tested it for ballistic and DNA results. The ballistic expert determined that some of the fired cartridge cases from the scene were fired from a 45-caliber Hi-Point firearm, one of the plastic shot wads examined was consistent as having been fired from a Remington 12-gauge shotgun, and the lead pellets were consistent with number six lead shot pellets. The DNA expert analyzed DNA from a pair of shorts found in the roadway at the crime scene, as well as DNA from a Crown Royal bag that contained an empty box of shotgun shells. The DNA from the shorts matched Hall's DNA profile at 1 in 1 trillion persons, meaning that the DNA expert would have to test 1 trillion people before he would find another person (besides Hall) to match the DNA on the shorts. There were two DNA profiles on the Crown Royal bag, one that matched Hall's DNA and one that matched Nelson's DNA. Again, the DNA on the bag matched Hall at 1 to 1 trillion and the second DNA profile on the bag matched Nelson at 1 to 10,000.

{¶11} Law enforcement also suspected that there were at least two shooters involved because there were spent 45-caliber rounds and spent shotgun shells at the scene and one assailant typically does not carry both a shotgun and a handgun. Through more investigative efforts, law enforcement determined that Koentae [sic] Nelson may have some involvement in the case and went to his work to interview him. Nelson denied all involvement and agreed to provide a DNA swab. Nelson's DNA evidence matched the DNA on evidence from the crime scene - specifically the other DNA profile found on the Crown Royal bag. Nelson was arrested. Additional interviews with Nelson led to the discovery of Richard Walker's involvement in the case. Nelson admitted that he and Walker were at Roush's residence

3

in the early morning hours in question, but his description of events did not match up with the evidence at the crime scene.

{¶12} Law enforcement arrested Richard Walker. Walker agreed to enter a guilty plea to conspiracy and burglary with a prison term of 15 to 20 1/2 years in exchange for his truthful testimony at the trials of Hall and Nelson.

{¶13} Walker testified that he, Hall, and Nelson were friends in the same rap band together and hung out together making music and playing video games. About a week before Roush's murder, the three of them were together at Nelson's house when Hall and Nelson started talking about killing Roush because Hall suspected that Roush was "snitching" on him. Both Hall and Nelson wanted to kill Roush for what they believed was "snitching." Nelson told Hall that he would kill Roush. On the night of the murder, Hall contacted Walker and asked him to come over because "we have to go handle something." The three of them drove to Pomeroy, Ohio, which was about an hour drive from where they lived in Charleston, West Virginia. Walker believed that they were going there to kill Roush, he did not think they were going to rob him of money or marijuana. When they arrived, Hall took out a 12-gauge shotgun and Nelson took out a 45-caliber from the trunk of the car. Walker had an inoperable black and pink gun. They all approached Roush's house and Nelson knocked on the door and asked to borrow Roush's phone. At that point, Hall rushed forward and hit Roush with the butt end of the shotgun causing Roush to stumble backward. Walker held Roush at gunpoint while Hall and Nelson searched his apartment for guns, money, and drugs. Nelson found $500 dollars in Roush's wallet and gave Walker $200 and kept $300 for himself. They also took Roush's cell phone. After they finished the search of Roush's house, Hall told Nelson, "You know what to do" which meant that Nelson was to shoot Roush. Nelson shot Roush three or four times as Roush tried to run out the door. One of the bullets Nelson fired hit Hall in the right arm. Walker and Nelson started running back to their car as Roush continued to crawl away. Hall stayed back and shot Roush at least two more times with the shotgun. Walker drove, Nelson was in the passenger side, and Hall, who arrived last, was in the backseat. They drove back to Charleston, tossing the wallet and cellphone out the car window along the way. They also stopped once to get bandages for Hall's arm and once to get gas. After they returned to Charleston, they parted ways and Walker did not see or talk to Nelson or Hall again.

(Decision, State Court Record, ECF No. 8, Ex. 9, PageID 146-50).

The Ohio Supreme Court declined to exercise jurisdiction over a subsequent appeal. *Id.* at Ex. 13).

On September 3, 2024, Petitioner filed a delayed application to reopen his appeal to argue an issue of ineffective assistance of appellate counsel. *Id.* at Ex. 14. The Fourth District denied reopening because the application was untimely and it failed to raise a genuine issue of ineffective assistance of appellate counsel. *Id.* at Ex. 16. The Ohio Supreme Court again declined to exercise appellate jurisdiction. *Id.* at Ex. 23.

Nelson's counsel filed his Petition in this Court on December 24, 2024, pleading the following grounds for relief:

> **Ground One**: Insufficient Evidence: Nelson's convictions lack legally sufficient evidence, failing to prove prior calculation, intent to kill, or shared intent.
>
> **Supporting Facts:** Nelson's convictions lack legally sufficient evidence to support the charges. There was no evidence that Nelson knew Roush prior to the incident, negating any strained relationship necessary for prior calculation and design. The prosecution's reliance on Walker's testimony was misplaced, as it was speculative, inconsistent, and lacked corroboration regarding Nelson's alleged involvement in planning the murder. Furthermore, there was no evidence that Nelson prepared or chose the murder weapon or site, as Walker testified that no weapons were visible until arriving at Roush's home. Nelson's actions at the scene were inconsistent with intent to kill, as he focused on searching for marijuana and money and only fired his weapon upon Hall's directive, "You know what to do." The coroner's report, showing gunshot wounds to Roush's lower back and legs, supports an inference of intent to injure rather than kill. Testimony failed to establish Nelson's participation in planning or that he shared the murderous intent of Hall, the principal offender.
>
> **Ground Two**: Cruel and Unusual Punishment: Life without parole is cruel punishment under the Eighth Amendment, considering Nelson's young age and rehabilitation potential.
>
> **Supporting Facts**: Nelson was 20 years old at the time of the offense, with his age placing him just beyond adolescence. The

5

sentence of life imprisonment without the possibility of parole gives no consideration to his potential for rehabilitation or personal development. At trial, the evidence suggested his role in the events was not as the primary actor, and no prior criminal history or other aggravating factors were presented to justify such a severe punishment. The lack of focus on his youth and individual circumstances in determining the sentence raises concerns about its fairness and appropriateness.

**Ground Three**: Admission of conspiracy-related evidence after reversal of the conspiracy conviction.

**Supporting Facts:** During Nelson's trial, the court admitted extensive conspiracy-related evidence, despite the conspiracy conviction being reversed due to a defective indictment that failed to allege a specific, substantial overt act as required by law. This evidence included testimony from co-defendant Richard Walker, who claimed Nelson agreed to a plan to kill the victim, Kane Rousch. Walker described alleged discussions and preparations related to the conspiracy, portraying Nelson as actively involved in a premeditated murder plot. However, without a valid conspiracy charge, this evidence was irrelevant and inadmissible under evidentiary rules, as it did not pertain to the remaining charges of aggravated murder, murder, or complicity. The jury's exposure to this improperly admitted evidence likely prejudiced their perceptions of Nelson's intent and character, undermining his right to a fair trial by introducing highly prejudicial and irrelevant information into their deliberations.

(Petition, ECF No. 1, PageID 5, 7, 8).

# Analysis

**Ground One:  Insufficient Evidence to Convict**

In his first ground for relief, Nelson claims he was convicted on constitutionally insufficient evidence. Nelson raised this claim as his second assignment of error on direct appeal and the Fourth District decided it as follows:

6

> {¶2} In his second assignment of error, Nelson contends that his convictions for aggravated murder, murder, complicity, and conspiracy are not supported by sufficient evidence. He argues that there was insufficient evidence that he had the requisite intent required for each of the crimes. We find that Nelson's argument concerning his conviction for conspiracy is moot because, as explained below, we sustain his third assignment of error and find the indictment for conspiracy is fatally flawed and his conviction reversed. However, his convictions for aggravated murder, murder, and complicity are supported by sufficient evidence. The state presented sufficient evidence through eyewitness testimony and the coroner's testimony to allow any rational trier of fact to find all the essential elements of these crimes proven beyond a reasonable doubt. We overrule his second assignment of error.

(Decision, State Court Record, ECF No. 8, Ex. 9, PageID 1931).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

7

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  When reviewing a claim for sufficient evidence, a federal habeas court must apply a twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).  In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam).

8

> And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). The federal courts do not make credibility determinations in reviewing sufficiency of the evidence claims. *Brooks v. Tennessee,* 626 F.3d 878, 887 (6th Cir. 2010). *Thompson v. Skipper*, 981 F.3d 476 (6th Cir. 2020). "To evaluate a sufficiency-of-the-evidence claim, we consider 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. (quoting *Jackson*, 443 U.S. at 324)."

Nelson's counsel's argument on Ground One reads as if it were a closing argument to the jury. For example, he notes that Walker's testimony was uncorroborated. That could be persuasive to a jury, but there is no requirement in the *Jackson v. Virginia* jurisprudence that testimony must be corroborated before it can be believed beyond a reasonable doubt. He argues that the gunshot wounds suffered by the victim from the weapon presumable wielded by Nelson could evidence intent to wound rather than intent to kill. But when one person shoots another four times and the wounded person dies, that is sufficient evidence of intent to kill or, to put it more formally, that is sufficient evidence for a reasonable juror to find intent to kill. Use of a gun on the body of another human being clearly supports an inference of intent.

As another example, Nelson argues "Even the appellate description— that Nelson

9

"obtained entry by feigning a request to borrow a phone" and fired as Roush fled—does not compel the mental-state leap the State urges." (Traverse, ECF No. 17, PageID 1969). The test is not whether the inference is compelled, but whether a rational juror could rationally make the inference. Nelson characterizes the statement "You know what to do" by Hall just before the shooting as being unable to "transform a split-second, chaotic sequence into proof of prior calculation or purpose." This was not a chaotic split-second sequence. The record establishes that Hall, Nelson, and Walker drove to the scene from Charleston, West Virginia, a trip that takes more than a split second.

The Fourth District's decision on the sufficiency issue is entitled to deference as is the jury's prior decision to convict. Ground One should be dismissed on the merits.

**Ground Two: Cruel and Unusual Punishment**

In his second ground for relief, Nelson asserts that his sentence to life imprisonment without the possibility of parole amounts to cruel and unusual punishment in violation of the Eighth Amendment in light of his age and amenability to rehabilitation.

Nelson presented this claim as an assignment of error on direct appeal and the Fourth District decided it as follows:

> {¶ 61} Nelson contends that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment because he was 20 years old at the time he committed aggravated murdered and "sentencing such a young man to a term of life imprisonment without any hope of release is extreme and cruel" under the Eighth Amendment of the United States Constitution and Section 9, Article I, of the Ohio Constitution.
>
> {¶ 62} The state argues that Nelson was sentenced in accordance with the statutory provisions governing the penalties for aggravated

10

murder, which include life without parole. The state points out that Nelson failed to cite to any case law, either federal or state, which has held that a life sentence without parole is unconstitutional.

{¶ 63} Review of felony sentences is governed RC. 2953.08. Subsection RC. 2953.08(0)(3) prevents review of sentences imposed for aggravated murder: "A sentence imposed for aggravated murder or murder pursuant to sections 2929.02 to 2929.06 of the Revised Code is not subject to review under this section." However, the Supreme Court of Ohio has held that this statutory prohibition against review of aggravated murder and murder sentences "does not preclude an appeal of a sentence for aggravated murder or murder that is based on constitutional grounds." *State v. Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.2d 952, ¶ 22. *Patrick* also held that age is a relevant sentencing factor under R. C. 2 929. 12 when a trial court sentences a juvenile offender. Id. at ¶ 27.

{¶ 64} Nelson concedes he was a 20-year-old adult man, not a juvenile, when he committed aggravated murdered [sic]. Therefore, we find the case law governing the sentencing of juveniles and the requirement to consider their age to be irrelevant. *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, ¶ 12 ("children are constitutionally different from adults for purposes of sentencing"). Moreover, even juveniles may be sentenced to life in prison without the possibility of parole without running afoul of the Eighth Amendment. *Jones v. Mississippi,* 209 L.Ed.2d 390, 141 S.Ct. 1307, 1311 (2021) (a juvenile who commits a homicide may be sentenced to life without parole, but only if the sentence is not mandatory and the trial court has discretion to impose a lesser punishment - a finding of permanent incorrigibility is not required); *State v. Ramsay,* 9th Dist. Medina No. 19CA0016-M, 2021-Ohio-2870, ¶ 15 Juvenile sentenced to life without parole for murder of 98-yearold woman after breaking into her home).

{¶ 65} Nelson fails to explain how his sentence is cruel and unusual punishment under the U.S. or Ohio Constitutions. The Supreme Court of Ohio has summarized this constitutional requirement as one that forbids extreme sentences that are grossly disproportionate to the crime and shocks the sense of justice of the community:

> The Eighth Amendment to the United States Constitution applies to the states pursuant to the Fourteenth Amendment. The amendment provides:

11

> "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Section 9, Article I of the Ohio Constitution sets forth the same restriction: "Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted."
>
> In *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 715 N.E.2d 167, we applied Justice Kennedy's Eighth Amendment analysis in his concurring opinion in *Harmelin v. Michigan* (1991), 501 U.S. 957, 997, 111 S.Ct. 2680, 115 L.Ed.2d 836. We quoted with approval his conclusion that " '[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.' " We further emphasized that " 'only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality' " may a court compare the punishment under review to punishments imposed in Ohio or in other jurisdictions.
>
> With respect to the question of gross disproportionality, we reiterated in *Weitbrecht* that " '[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person,' " and furthermore that " 'the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.' "

(Citations omitted.) *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 12-14.

{¶ 66} Nelson does not allege that his sentence is grossly disproportionate to the crime of aggravated murder or that it is shocking to a reasonable person. We find that Nelson's life sentence without parole is not grossly disproportionate to the offense of aggravated murder - others have been similarly sentenced for aggravated murder without shocking the community's sense of justice. *State v. Gardner*, 2022-Ohio-2725, 193 N.E.3d 1156 (12th Dist.) (defendant plead guilty to aggravated murder and conspiracy to commit aggravated murder, as well as an accompanying firearm specification and was sentenced to life without the possibility of parole). Nelson agreed to plan out and execute the murder of a person who had not harmed him, threatened him, and whom he may

12

> not have even known. Nelson agreed to murder Roush for the simple reason that he thought Roush may have "snitched" on his friend Hall. Nelson had a week plus an hour-long car ride to consider his actions. When he got there, he pretended to be someone in need so that Roush would sympathize, open the door to him, and lend him a phone. After ransacking Roush's home and stealing $500, he then repeatedly shot Roush with a 45-caliber firearm from a short distance while Roush attempted to flee from him. The gunshot wounds Nelson inflicted, along with those from Hall's shotgun, killed Roush. Nelson's sentence is not unconstitutional.

(Decision, State Court Record, ECF No. 8, Ex. 9, PageID 170-73).

This Court cannot review Nelson's Ohio constitutional claim. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

With respect to the Eighth Amendment claim, Nelson must show that the Fourth District's decision is an objectively unreasonable application of relevant Supreme Court precedent. 28 U.S.C. § 2254(d)(1). He has not done so. In particular he has cited no Supreme Court precedent requiring individualized consideration of psychological evidence before imposing a sentence of life without parole on a twenty-year-old murderer.

Petitioner portrays the Fourth District as having given no consideration to the particular facts of this case before affirming the sentence, but that is inaccurate. Instead it noted that Roush had never harmed Nelson in any way, that Nelson had ample time to re-think his commitment to

Hall, and that Nelson inflicted more harm than the shooting alone – theft of $500.

Nelson requests an evidentiary hearing at which he could present mitigating evidence. Consideration of evidence beyond the state court record is precluded by precedent. *Cullen v. Pinholster,* 563 U.S. 170 (2011). *Pinholster* bars a federal court "from admitting new evidence upon which to assess the reasonableness of a state court's constitutional analysis." *Upshaw v. Stephenson*, 97 F. 4th 365, 372 (6th Cir. 2024), quoting *Mitchell v. Genovese*, 974 F.3d 638, 647 (6th Cir. 2020).

Nelson's Second Ground for Relief is without merit and should be denied.

**Ground Three: Unconstitutional Admission of Conspiracy-Related Evidence**

In his third ground for relief, Nelson claims admission of conspiracy-related evidence at trial was unconstitutional because the Fourth District dismissed the conspiracy charge on appeal.

The evidence complained of was part of the trial court transcript on direct appeal. Therefore any error in its admission could have been raised on direct appeal to the Fourth District. However, it is not among the assignments of error in Nelson's brief on appeal (Brief, State Court Record, ECF No. 8, Ex. 6, PageID 80-82). If omission of this claim on direct appeal was thought to be deficient performance by appellate counsel, that claim could have been preserved by obtaining a finding of ineffective assistance of appellate counsel in that regard. However, the sole method of obtaining such a finding is by application to reopen the appeal under Ohio R. App. P. 26(B). In this case Nelson sought such a finding by filing under Rule 26(B), but his filing was untimely and therefore his claim of excuse by ineffective assistance of appellate counsel is itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446 (2000); *Chase v. MaCauley*, 971

14

F.3d 582, 592 (6th Cir. 2020); *Scuba v. Brigano*, 527 F.3d 479, 488 (6th Cir. 2007). Ineffective assistance of counsel on appeal cannot constitute cause for failure to file a timely application for reopening of the direct appeal under Ohio R. App. P. 26(B) since a person is not entitled to counsel for the reopening. *Riggins v. Turner,* 110 F.3d 64 (6th Cir. 1997).

Nelson's Third Ground for Relief should be dismissed as procedurally defaulted.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 15, 2025.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.